**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CUNNINGHAM LINDSEY U.S., INC.** | : | **CIVIL NO. 1:13-CV-2528** |
| **and CL ACQUISITIONS HOLDINGS** | : | |
| **LIMITED,** | : | **(Chief Judge Conner)** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PAT BONNANI, DALE FOHL, and** | : | |
| **VERICLAIM, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently pending before the court is the motion (Doc. 41) of Pat Bonanni ("Bonanni"), Dale Fohl ("Fohl"), and Vericlaim, Inc. ("Vericlaim"), collectively "defendants," asking the court to dismiss counts II, III, V, VI, VII, VIII, and X of the complaint (Doc. 1) of Cunningham Lindsey U.S., Inc., and CL Acquisition Holdings Limited (collectively "Cunningham Lindsey"). For the reasons that follow, the court will grant in part and deny in part the defendants' motion.

## I. Procedural History

Cunningham Lindsey commenced this matter with the filing of a ten-count complaint (Doc. 1) on October 8, 2013. Cunningham Lindsey alleges that two of its former employees, Pat Bonanni ("Bonanni") and Dale Fohl ("Fohl"), together with officers of Vericlaim, Inc., ("Vericlaim"), orchestrated and implemented a scheme to eliminate Cunningham Lindsey's regional presence by instigating a mass exodus of all Cunningham Lindsey employees at its Camp Hill, Pennsylvania, office during

the late summer of 2013. (See Doc. 1 at ¶ 2). Specifically, Cunningham Lindsey asserts ten (10) claims: breach of contract against Bonanni and Fohl (Count I); breach of fiduciary duty against Bonanni and Fohl (Count II); aiding and abetting breach of fiduciary duty against all defendants (Count III); misappropriation and misuse of trade secrets and confidential information in violation of Pennsylvania's Uniform Trade Secrets Act, 12 PA. CONS. STAT. § 5301 *et seq.*, against all defendants (Count IV); tortious interference with existing and prospective contractual and business relationships against all defendants (Count V); civil conspiracy against all defendants (Count VI); unfair competition against all defendants (Count VII); unjust enrichment against all defendants (Count VIII); violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against Bonanni and Fohl (Count IX); and breach of contract for failure to pay for preference shares of CL Holdings against Fohl (Count X).

Contemporaneously with the complaint, Cunningham Lindsey filed a motion for preliminary injunctive relief (Doc. 5), asking the court to enjoin defendants from virtually all direct and indirect competition with Cunningham Lindsey pending final resolution of this litigation. The parties fully briefed the motion (Docs. 9, 39, 44), and the court held a preliminary injunction hearing on October 31, 2013, taking evidence in the form of documentary exhibits and witness testimony. Thereafter, the parties submitted proposed findings of fact and conclusions of law (Docs. 54-55) and jointly submitted relevant exhibits and deposition transcripts. (Doc. 56). On November 19, 2013, the court issued a memorandum (Doc. 62) and order (Doc. 63)

denying Cunningham Lindsey's request for a preliminary injunction, concluding that Cunningham Lindsey had failed to demonstrate continuing, irreparable harm, and that the appropriate resolution of its claims must await trial on the merits.

In the instant motion (Doc. 41), defendants seek dismissal of Counts II, III, V, VI, VII, VIII, and X of Cunningham Lindsey's complaint. The motion has been fully briefed (Docs. 42, 43, 53, 64) and is ripe for disposition.

## II.   <u>Standard of Review</u>

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while legal conclusions may be disregarded. <u>Id.</u>; <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

## III.  **Allegations of the Complaint**

Cunningham Lindsey and Vericlaim are both in the business of claims adjustment and loss management for insurers and large self-insured clients. (Doc. 1 ¶ 14, 25). The two companies compete directly with one another. (Id.) Bonanni and Fohl both joined Cunningham Lindsey in January of 2011 after signing written offers of employment which included, *inter alia*, confidentiality[1] and employee non-

---

[1] Each agreement contained the following confidentiality provision:

> At all times, both during and after termination of employment, I shall keep and retain in confidence and shall not disclose, except as required in the course of my employment with [Cunningham Lindsey], to any person, firm or corporation, or use for my own purposes, any Confidential Information. For purposes of this paragraph, such information shall include, but is not limited to, material, data, and information of [Cunningham Lindsey] and/or its customers or clients that is confidential, proprietary and/or a trade secret ("Confidential Information").

(Doc. 1, Ex. A at 2-3; Ex. B at 2-3).

4

solicitation[2] clauses.  (Id. ¶¶ 36-38, 45-47).  In their roles as executive general adjusters at Cunningham Lindsey's Camp Hill office, Bonanni and Fohl each had access to confidential documents.  (Id. ¶¶ 41-42, 49).  Additionally, in June of 2013, Fohl executed a subscription agreement wherein he agreed to purchase certain Cunningham Lindsey shares.  (Id. ¶¶ 50-55; Ex. C).  The subscription agreement contained broad non-competition, non-solicitation, non-hire, and confidentiality provisions.  (Id.)  The provisions prohibit Fohl from soliciting Cunningham Lindsey customers or employees for a period of six months after departing Cunningham Lindsey for any reason.  (Id.)

On September 5, 2013, Bonanni, Fohl, and all other Cunningham Lindsey employees working at the Camp Hill office resigned simultaneously, without notice, and began working for Vericlaim.  (Id. ¶¶ 2, 74-75, 77).  According to Cunningham

---

[2] The agreements contained the following non-solicitation clause:

> While employed by Cunningham Lindsey, and for one year after termination of my employment for whatever reason, I will not directly or indirectly solicit or recruit, nor take any action to assist any other person to solicit or recruit for employment, any employee of Cunningham Lindsey. Such assistance includes, without limitation, identifying employees of Cunningham Lindsey who have special knowledge of the trade secrets and/or business of Cunningham Lindsey. Because damages for violation of this provision would be difficult to measure, the parties mutually agree that if I violate this provision, I will be liable for liquidated damages in an amount equal to the annual salary of any employee as to whom I am proven to have violated this paragraph.

(Doc. 1, Ex. B at 2; Ex. C at 2).

Lindsey's complaint, in the period leading up to this mass resignation, defendants prepared interim invoices for customers, accessed Cunningham Lindsey documents on company computers, downloaded documents to personal devices, scanned an unusually large number of documents, and deleted information from equipment. (Id. ¶¶ 62, 63-66, 71-72). Cunningham Lindsey also alleges that Vericlaim and the individual defendants communicated with Cunningham Lindsey clients before the mass resignation and caused clients to request transfer of their files to Vericlaim after the mass resignation. (Id. ¶¶ 83-86). Cunningham Lindsey alleges that this scheme was orchestrated by Vericlaim, together with Bonanni and Fohl, with the intent of crippling and dismantling its Camp Hill office. (Id. ¶ 5).

IV. **Discussion**

Defendants' motion to dismiss tests the sufficiency of several counts of Cunningham Lindsey's complaint. Defendants assert that Counts II, III, VI, VII, and VIII of Cunningham Lindsey's complaint are preempted by the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 PA. CONS. STAT. § 5301 *et seq.*, that Counts II, V, VI, and VII are barred by the gist of the action doctrine, and that Count X fails to state a claim for breach of contract because the subscription agreement is not supported by consideration. (Doc. 41). The court will address each argument *seriatim*.

A. **PUTSA Preemption**

The parties do not dispute that PUTSA expressly "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for

6

misappropriation of a trade secret." 12 Pᴀ. Cᴏɴs. Sᴛᴀᴛ. § 5308(a).  The Act excepts only three categories of claims from the scope of its preemption power: contractual and criminal remedies, whether or not based upon misappropriation of a trade secret, and other civil remedies that are not based upon misappropriation of a trade secret.  See id. § 5308(b).  The parties do not dispute that PUTSA preempts certain civil claims having their basis in trade secret misappropriation.  Instead, the parties' arguments concern whether Cunningham Lindsey's claims in Counts II, III, VI, VII, and VIII involve allegations beyond misappropriation of a trade secret sufficient to avoid PUTSA preemption.

Courts within the Third Circuit have construed PUTSA as preempting common law tort claims for breach of fiduciary duty and confidentiality, civil conspiracy, unfair competition, and unjust enrichment when the Court determines that the allegedly misappropriated information is indeed a trade secret.  See Kimberton Healthcare Consulting v. Primary PhysicianCare, Inc., 2011 U.S. Dist. LEXIS 139980, *10-11 (E.D. Pa. Dec. 6, 2011) (unfair competition, conversion, misappropriation); Hecht v. Babyage.com, 2010 U.S. Dist. LEXIS 106895, *10-14 (M.D. Pa. Oct. 6, 2010) (breach of duty of loyalty, breach of fiduciary duty, unfair competition); Ideal Aerosmith, Inc. v. Acutronic USA, Inc., 2008 U.S. Dist. LEXIS 33463,S *6 (W.D. Pa. Apr. 23, 2008) (civil conspiracy, unfair competition).  This rule of preemption assumes two overlapping contingencies: first, that the plaintiff's tort claims do not involve anything other than trade secrets and, second, that the allegedly misappropriated information is properly classified as a trade secret.  See

Youtie v. Macy's Retail Holding, Inc., 653 F. Supp. 2d 612, 620 (3d Cir. 2009) (preemption exists only to the extent that PUTSA trade secret claim and common law tort claim are premised on exclusively the same conduct). The court cannot conclude that either contingency is satisfied at this preliminary stage.

First, preemption exists only to the extent that plaintiff's common law tort claim is "based on the same conduct that is said to constitute a misappropriation of trade secrets." Youtie, 653 F. Supp. 2d at 619 (collecting cases from district courts throughout the United States holding same); Hecht, 2010 U.S. Dist. LEXIS 106895 at *10-11 (same) (citing Hecny Transp., Inc. v. Chu, 430 F.3d 402, 405 (7th Cir. 2005) ("An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record.")). Cunningham Lindsey's claims for breach of fiduciary duty, civil conspiracy, unfair competition, and unjust enrichment each contemplate acts beyond misappropriation of trade secrets. In support of its fiduciary duty claims, for example, Cunningham Lindsey contends that both Fohl and Bonanni failed to act consistently with the interests of their employer, orchestrated and implemented a plan by which all Cunningham Lindsey employees at the Camp Hill office would resign simultaneously with the intent of eviscerating the Cunningham Lindsey's regional presence, and directed others in copying and destroying client files and paperwork. (Doc. 1 ¶¶ 109-112). Further, Cunningham Lindsey contends that Bonanni and Fohl worked with Vericlaim to cajole known Cunningham Lindsey clients into terminating their business relationships with Cunningham

8

Lindsey and transitioning their files to Vericlaim. (Id. ¶ 116). All of these

allegations form the basis of Cunningham Lindsey's claims for civil conspiracy,

unfair competition, and unjust enrichment. (Id. ¶ 141, 144, 147). Each of the

challenged counts thus contemplates tortious conduct which, assumed true, falls

outside of the scope of PUTSA's preemption clause. See Hecht, 2010 U.S. Dist.

LEXIS 106895 at *12-13 (rejecting similar argument when plaintiff's allegations

"would constitute the named torts even if the conduct involved information that did

not constitute a trade secret within the meaning of PUTSA"). Accordingly, the

court cannot conclude that these counts are preempted by PUTSA at this stage.

Moreover, the record as presently developed does not establish whether the

information and documents purportedly taken by Bonanni and Fohl constitute

trade secrets at all. Cunningham Lindsey contends that its customer lists are trade

secrets. (Doc. 1 ¶ 125 (asserting that books, files, records, and client lists constitute

confidential trade secret information). And in their Rule 12(b)(6) brief, defendants

apparently assume for purposes of their argument that this is true. (Doc. 42 at 7-

10). The court is disinclined to make such a determination without the benefit of a

fully developed record. See Alpha Pro Tech, Inc. v. VWR Int'l LLC, 2013 U.S. Dist.

LEXIS 167762, *54 (E.D. Pa. Nov. 25, 2013) (PUTSA "does not preempt common

law tort claims when it has yet to be determined whether the information at issue

constitutes a trade secret.") (quoting Cenveo Corp. v. Slater, 2007 U.S. Dist. LEXIS

9966, *3 (E.D. Pa. Feb. 12, 2007)); Hecht, 2010 U.S. Dist. LEXIS 106895 at *13 ("To

prevail under the terms of the PUTSA, the . . . plaintiff would have to demonstrate

the existence of a trade secret, and that determination requires discovery.").
Neither preemption contingency is satisfied at this stage. Consequently, the court
rejects defendants' PUTSA argument.

Many of our sister courts have also determined that resolution of a PUTSA
preemption challenge at the Rule 12(b)(6) stage is premature. See Kimberton, 2011
U.S. Dist. LEXIS 139980 at *14 ("The vast majority of courts to have addressed
whether PUTSA preempts common law tort claims on a motion to dismiss have
determined that such a determination is inappropriate in such circumstances.")
(citing, *inter alia*, Council for Educ. Travel v. Czopek, 2011 U.S. Dist. LEXIS 9923,
*7 (M.D. Pa. Sept. 2, 2011); EXL Labs. v. Egolf, 2011 U.S. Dist. LEXIS 25295, *7-8
(E.D. Pa. Mar. 11, 2011); Hecht, 2010 U.S. Dist. LEXIS 106895 at *5; Partners Coffee
Co. v. Oceana Servs. & Prods. Co., 2009 U.S. Dist. LEXIS 113209, *11 (W.D. Pa.
Dec. 4, 2009); Ideal Aerosmith, 2008 U.S. Dist. LEXIS 33463, *16-18 (W.D. Pa.
Apr. 23, 2008); Weiss v. Fiber Optic Designs, Inc., 2007 U.S. Dist. 83585, *1 (E.D. Pa.
Nov. 9, 2007)). The court concurs with the *ratio decidendi* of these cases.[3]

---

[3] As the court observed in Kimberton, to dismiss common law tort claims on
preemption grounds at the motion to dismiss stage only to later determine that the
information was not in fact a trade secret would deprive plaintiffs of a deserved
remedy. Id. at *15 (preemption rulings under Rule 12(b)(6) "risk[] leaving the
claimant without a remedy for information he proves has been stolen") (quoting
EXL Labs., 2011 U.S. Dist. LEXIS 25295 at *8; Cenveo Corp., 2007 U.S. Dist. LEXIS
9966 at *4)); see also EXL Labs., 2011 U.S. Dist. LEXIS 25295 at *8; ("If we dismiss
the plaintiff's conversion claim, and later determine that plaintiff's confidential
information does not constitute trade secrets, we risk leaving plaintiff without a
remedy.").

For all of these reasons, defendants' preemption argument must await summary judgment.

## B.    Gist of the Action

Defendants next contend that the "gist of the action" doctrine bars Cunningham Lindsey's claims in Counts II, III, V, VI, and VII for breach of (and aiding and abetting breach of) fiduciary duty, tortious interference with existing and prospective contractual and business relationships, civil conspiracy, and unfair competition, respectively. For breach of a contract to constitute an actionable common law tort, the allegedly tortious conduct "must be the gist of the action, the contract being collateral." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002). The gist of the action doctrine bars a tort claim when (1) the claim arises from a contract between the parties, (2) the duties breached were created by the contract, (3) liability derives from the contract, or (4) the success of the tort claim is wholly dependent upon the contract's terms.[4] Id. at 19. When applying the gist of the action doctrine, the Pennsylvania Superior Court has explained that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Id. at 14 (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001)). In other words, the

---

[4] The Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine, but the Third Circuit Court of Appeals and Pennsylvania Superior Court have predicted that it will do so. See Williams v. Hilton Group, PLC, 93 Fed. App'x 384, 385-86 (3d Cir. 2004); eToll, 811 A.2d at 14.

court must inquire as to the source of the duties allegedly breached: "if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." <u>Knit With v. Knitting Fever, Inc.</u>, 2009 U.S. Dist. LEXIS 98217, *13-14 (E.D. Pa. Oct. 20, 2009). Defendants argue that Cunningham Lindsey's breach of contract claim subsumes the majority of its common law tort claims.

Cunningham Lindsey concedes that misappropriation of confidential information and solicitation of employees and customers are contemplated by Bonanni and Fohl's employment agreements and Fohl's subscription agreement, implicitly acknowledging that tort claims based on those actions would be precluded by the gist of the action doctrine. (Doc. 43 at 17 (observing that "misappropriation of confidential information and solicitation of employees" and "other limitations on Fohl" are "covered by the letter agreements" and "covered by the Subscription Agreement")). Cunningham Lindsey argues, however, that its claims are much broader, emphasizing that Fohl and Bonanni engaged in (and encouraged others to engage in) improper interim invoicing prior to their departure "as part of an effort to prepare the clients to transition their ongoing work to Vericlaim," (Doc. 1 ¶ 62), deleted all contacts and calendar entries before returning company-issued phones to Cunningham Lindsey (<u>id.</u> ¶¶ 72-73), left the Camp Hill office in a state of disarray to hinder its ability to transition clients to new Cunningham Lindsey adjusters, (<u>id.</u> ¶¶ 77-82), and attempted to destroy entire lines of business for Cunningham Lindsey.  (<u>Id.</u> ¶¶ 89, 92-94).  Cunningham Lindsey

asserts that these alleged wrongdoings constitute "a much broader set of wrongful acts" than breach of a contractual promise and that, in any event, it is premature to apply the gist of the action doctrine at this stage of the litigation. The court will address each argument *seriatim*.

With respect to Cunningham Lindsey's claims for breach of fiduciary duty and interference with a contractual relationship, the court is compelled to agree with defendants. To this end, <u>Brown & Brown, Inc. v. Cola</u>, 745 F. Supp. 2d 588 (E.D. Pa. 2010) is instructive. In <u>Brown & Brown</u>, the defendants, Robert Cola ("Cola") and Ryan Tola ("Tola"), were insurance brokers employed by Doyle Consulting. <u>Id.</u> at 598-99. Brown & Brown acquired Doyle Consulting and hired its owner, Francis Doyle ("Doyle"), as an executive officer. <u>Id.</u> at 597-98. Brown & Brown also hired Cola and Tola, and each executed an employment agreement containing employee and customer non-solicitation provisions and broad confidentiality clauses. <u>Id.</u> at 598-99. According to Brown & Brown, Doyle then developed a plan to take back his business and former employees, and enlisted both Cola and Tola to assist him. <u>Id.</u> at 600. The complaint averred that while Cola and Tola were working for Brown & Brown, they "engaged in building a competitive business by meeting with Doyle, setting up an office, soliciting Brown & Brown's customers, and using Brown & Brown's proprietary information," and that Cola and Tola went so far as to make "false, detrimental, and disparaging statements about" Brown & Brown. <u>Id.</u> at 601. Brown & Brown responded with a lawsuit

against Cola, Tola, and Doyle, asserting, *inter alia*, claims for breach of contract, breach of fiduciary duty, and tortious interference with contractual relationships.

With respect to the fiduciary duty claims, the court observed that such claims are barred by the gist of the action doctrine when the fiduciary duty at issue does not "transcend or exist outside [of] obligations under the employment agreements." Id. at 621 (citing <u>Ginley v. E.B. Mahoney Builders, Inc.</u>, 2005 U.S. Dist. LEXIS 118, *3 (E.D. Pa. Jan. 5, 2005)). The court noted an exception to the rule, opining that when the "obligations arising under a fiduciary duty are imposed 'as a matter of social policy' rather than 'by mutual consensus'" of the parties, claims sounding in tort can coexist with contract claims, with neither precluding the other. Id. (citing <u>Bohler-Uddeholm</u>, 247 F.3d at 104). The court held, however, that when fiduciary obligations derive from the parties' employment agreement, the gist of the action doctrine compels their dismissal. <u>See</u> id. at 620-21. Concluding that the gravamen of Brown & Brown's fiduciary duty claims was the breach of confidentiality and non-solicitation provisions, the court held that the gist of the action doctrine required dismissal of Brown & Brown's fiduciary duty and duty of loyalty claims. <u>See</u> <u>id.</u>

Further, the court concluded that the gist of the action doctrine bars Brown & Brown's tortious interference claims. The court observed that the doctrine bars such a claim when "it is not independent of a contract claim that is pled along with it." <u>Id.</u> at 621 (quoting <u>Alpart v. Gen. Land Partners, Inc.</u>, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008)). The court identified two types of relationships with which Cola

and Tola purportedly interfered: those between Brown & Brown and its customers, and those between Brown & Brown and its employees. Id. at 621-22. Observing that any allegation that Cola or Tola solicited customers or employees was expressly governed by their employment agreements' non-solicitation clauses, the court concluded that each claim must be dismissed pursuant to the gist of the action doctrine. Id. at 622.

Cunningham Lindsey has failed to distinguish Brown & Brown from the instant matter. The court finds the decision to be persuasive authority and properly applied to the matter *sub judice*. Here, the gravamen of the complaint is that Bonanni and Fohl orchestrated the mass resignation of Cunningham Lindsey's Camp Hill employees, and encouraged all of its Camp Hill customers to follow them to Vericlaim. Indeed, in the opening paragraphs of its complaint, Cunningham Lindsey summarized the nature of its claims by alleging that defendants: (1) implemented a scheme by which all employees would resign at the same time to begin working for a competitor; (2) coordinated the mass resignation to exact maximum harm on client relationships and transition clients to Vericlaim; (3) accessed and destroyed confidential information; and (4) conspired with and aided and abetted each other in accomplishing the same. (Doc. 1 ¶¶ 2-4). If true, these claims are governed entirely by the employment agreements and their respective non-solicitation and non-competition provisions.

Cunningham Lindsey's attempt to highlight facts which it considers to be beyond the scope of the employment agreement is unavailing. Rather than offering

a response to <u>Brown & Brown</u>, Cunningham Lindsey selectively emphasizes certain paragraphs of its complaint which avoid reference to a contract. For example, Cunningham Lindsey highlights its allegation that the defendants issued interim invoices to customers, disorganized or destroyed files, and attempted to cripple its Camp Hill office. (Doc. 43 (citing Doc. 1 ¶¶ 71, 77-82, 89, 92-94)). These facts simply do not support separate causes of action beyond Cunningham Lindsey's breach of contract claim; instead, they merely represent those actions taken by defendants in furtherance of their contractual breach. Cunningham Lindsey has failed to allege any conduct underlying its fiduciary duty or tortious interference claims that is not contemplated by the defendants' contracts, and those claims cannot survive the gist of the action bar.

Cunningham Lindsey's unfair competition claim is based on the same conduct as its fiduciary duty and tortious interference claims. Consequently, the court concludes that it is similarly barred by the gist of the action doctrine. The court notes that Cunningham Lindsey has not articulated a "broader set of wrongful acts" which would bring its unfair competition claim beyond the scope of the doctrine, (<u>see</u> Doc. 43 at 18), and the court's examination of the complaint reveals no allegation transcending the contractual agreement itself. Count VII alleges only that "by engaging in the conduct described," defendants engaged in unfair competition with Cunningham Lindsey. (Doc. 1 ¶ 144). As set forth above, the "conduct described" is governed entirely by the contractual relationship. <u>See</u>, <u>e.g.</u>, <u>Bohler-Uddeholm</u>, 247 F.3d at 103 (dismissal appropriate pursuant to gist of

the action doctrine when common law tort claim is "collateral" to a breach of an employment agreement). Cunningham Lindsey's common law unfair competition claim is therefore barred by the gist of the action doctrine.

Cunningham Lindsey's civil conspiracy claim must also be dismissed. Courts within this Circuit routinely dismiss civil conspiracy claims when the underlying tort claim is barred by the gist of the action doctrine. See, e.g., Oldcastle Precast v. VPMC, Ltd., 2013 U.S. Dist. LEXIS 67481, *30 (E.D. Pa. May 13, 2013) (dismissing civil conspiracy claim when underlying claims of negligent misrepresentation and fraud were barred by gist of the action doctrine); Alexander Mill Servs., LLC v. Bearing Distribs., Inc., 2007 U.S. Dist. LEXIS 72829, *30 n.2 (W.D. Pa. Sept. 28, 2007) ("It is well settled that a cause of action for civil conspiracy cannot stand where all causes of action in tort have been dismissed." (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979))).[5] Because Cunningham Lindsey's common law tort claims for breach of fiduciary duty, tortious interference, and unfair competition are barred by the gist of the action doctrine, so too is its civil conspiracy claim. See, e.g. Synthes, Inc. v. Emerge Med., Inc., 2012 U.S. Dist. LEXIS 134886, *48 (E.D. Pa. Sept. 19, 2012) ("[A] cause of action for civil conspiracy requires a distinct underlying tort as a predicate to liability.") (citing In re Ortho. Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999); Kist v. Fatula, 2007 U.S. Dist. LEXIS 60615, *9 (W.D. Pa. Aug. 17, 2007)).

---

[5] Cunningham Lindsey has raised no objection to this general principle. (See Doc. 43 at 16-20).

Finally, Cunningham Lindsey contends broadly that application of the gist of the action doctrine at the Rule 12(b)(6) stage is premature and inappropriate. (Doc. 43 at 18-19). Specifically, Cunningham Lindsey asserts that it is "factually unclear" at this juncture whether its claims sound in contract or tort. (See Doc. 64 at 4-7). Cunningham Lindsey also argues that defendant Fohl's subscription agreement is not adequately supported by consideration, precluding application of the gist of the action doctrine. (Doc. 43 at 20). The court rejects these arguments.

Despite Cunningham Lindsey's broad and generalized allegations that its tort claims "may" sound in either tort or contract, the complaint makes clear that each of the defendants' alleged wrongs derives from a perceived violation of a specific contractual provision. See supra at 13-17. That is, each action challenged by Cunningham Lindsey stems from violations of either affirmative obligations or restrictions created or imposed by the parties' contractual agreements. See id. Many courts have applied the gist of the action doctrine at the Rule 12 stage when, as here, it is unequivocal that the gist of the parties' claim is contractual and the tort claim is collateral. See, e.g., Brown & Brown, 745 F. Supp. 2d at 620-22 (claims for breach of fiduciary duty and tortious interference dismissed on Rule 12(b)(6) motion); Alexander Mill Servs., 2007 U.S. Dist. LEXIS 72829 at *23-28 (fraud, intentional misrepresentation, and negligent misrepresentation claims dismissed despite plaintiff's "attempt to recast its contracts claims" in tort); Ginley, 2005 U.S. Dist. LEXIS 118 at *3 (common law tort claims, including breach of fiduciary duty, dismissed when claims are "wholly dependent on the existence of a contract"

between the parties).  The court rejects Cunningham Lindsey's argument that the gist of the action doctrine may not be applied at this stage.[6]

Cunningham Lindsey's second argument is also unavailing.  It argues that because Fohl has challenged the validity and enforceability of a provision of his subscription agreement, any defense based on the gist of the action doctrine–which requires the existence of a valid contract–is misplaced.  (Doc. 43 at 20).  At least one court has squarely addressed, and rejected, this argument.  In Synthes, 2012 U.S. Dist. LEXIS 134886, the plaintiff argued that "dismissal under the gist of the action doctrine is premature" because the validity and scope of the contract was disputed. Id. at *22 n.5.  The plaintiff relied on Premier Payments Online, Inc., v. Payment Systems Worldwide, 848 F. Supp. 2d 513 (E.D. Pa. 2012), where the district court declined to apply the gist of the action doctrine, observing that its application is premature if "the validity and if valid, the effect, of a contract is uncertain."  Id. at 529.

---

[6] The bulk of the decisions cited by Cunningham Lindsey involved factual ambiguities with respect to whether the duties allegedly breached were created by the contracts.  See, e.g. ClinMicro Immunology Ctr., LLC v. PrimeMed, P.C., 2013 U.S. Dist. LEXIS 99909, *14-15 (M.D. Pa. July 17, 2013) (declining to apply doctrine at Rule 12 stage when it was "not clear that the duties [defendants] allegedly breached were grounded in the parties' agreements"); Synthes, 2012 U.S. Dist. LEXIS 134886 at *36-37 ("Where the *factual* nature of the allegations is unclear, this issue is best left for resolution . . . on a post-amendment motion to dismiss or, even more appropriately, on a post-discovery motion for summary judgment." (emphasis added)).  Here, in contrast, there is no question that the parties' contracts expressly contemplate the wrongdoings alleged by Cunningham Lindsey.

Ruling in favor of the defendants, the <u>Synthes</u> court highlighted a key distinction between the two cases: in <u>Premier Payments</u>, the very existence of the contract was unsettled, whereas in the case before it, as here, no party disputed the actual existence of the actual contract. <u>Synthes</u>, 2012. U.S. Dist. LEXIS 134886 at 22 n.5 (observing that it was the "scope and validity of the contractual provisions" and not the "very existence of the contract" which was disputed). Accordingly, the court rejected the plaintiff's argument, noting that application of the gist of the action doctrine is appropriate when "no party questions the existence of the pertinent contracts." <u>Id.</u> (citing Brown & Brown, 745 F. Supp. 2d at 619-25). This court concurs with the Synthes decision and its rationale. In the case *sub judice*, no party disputes the existence of defendants' employment agreements in the first instance, and there is no question that the conduct ascribed to defendants is contemplated by those agreements.

The court notes that the gist of the action doctrine bars common law tort claims *only* as to those parties that have or had a contractual relationship with the purported tortfeasor. <u>eToll</u>, 811 A.2d at 14 (gist of the action doctrine bars tort claim when it "arises from a contract between the parties"). Count II names only Fohl and Bonanni, both of whom had employment contracts with Cunningham Lindsey, and it will be dismissed in its entirety pursuant to the gist of the action doctrine. However, the remaining claims for aiding and abetting breach of a fiduciary duty, interference with contractual relationships, civil conspiracy, and unfair competition name the individual defendants *and* Vericlaim, which had no

contractual relationship with Cunningham Lindsey. The gist of the action doctrine bars those additional common law tort claims *only* against the individual defendants. Cunningham Lindsey's claims for aiding and abetting breach of a fiduciary duty, tortious interference, civil conspiracy, and unfair competition shall therefore proceed against Vericlaim.

### C.    Failure of Consideration

Defendant Fohl argues that Cunningham Lindsey's claim against him for breach of his subscription agreement fails for want of consideration. (Doc. 42 at 19-20). In Count X, Cunningham Lindsey asserts a claim for breach of contract, in particular the subscription agreement, against Fohl arising from his "failure to pay for preference shares of CL Holdings." (Doc. 1 ¶¶ 160-169). Cunningham Lindsey avers that Fohl agreed to pay to it the subscription amount of $50,000 in exchange for the purchase of 500 preference shares. (Id. ¶¶ 161-62). Cunningham Lindsey argues that this mutual exchange of promises constitutes sufficient consideration to support the subscription agreement. (Doc. 64 at 9-11). In defendants' motion to dismiss, Fohl contends that a separate arrangement between Cunningham Lindsey and himself required his former employer to accelerate the deferred compensation due to him, and that Cunningham Lindsey's failure to accelerate that compensation renders the entire subscription agreement void for lack of consideration. (Doc. 42 at 19-20). At this procedural juncture, the court must reject Fohl's contention.

Fohl is correct that black letter law renders unenforceable any agreement which is not supported by consideration. Blair v. Scott Specialty Gases, 283 F.3d

21

595, 603 (3d Cir. 2002) ("Without consideration, a contract is unenforceable."). The Third Circuit has explained that this consideration requirement is satisfied when the parties' contract "confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise." Id. (quoting Channel Home Centers v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986)). Cunningham Lindsey alleges that, under the subscription agreement, Fohl promised to pay the subscription amount of $50,000, to be drawn from Fohl's deferred compensation, in exchange for its delivery to Fohl of 500 shares of preference stock. (Doc. 1 ¶¶ 161-63). Assuming this to be true, as the court must at this stage, Cunningham Lindsey has sufficiently alleged that the subscription agreement was supported by a mutual exchange of promises, and the court thus rejects Fohl's argument that the agreement is void for lack of consideration.

## V.    Conclusion

For the reasons articulated above, the court will grant in part and deny in part the defendants' motion (Doc. 41) to dismiss. An appropriate order follows.


                        /S/ CHRISTOPHER C. CONNER
                        Christopher C. Conner, Chief Judge
                        United States District Court
                        Middle District of Pennsylvania

Dated:       April 22, 2014